**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trisha Marie Jimenez, | No. CV-18-08132-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff applied for disability insurance benefits on August 25, 2014, alleging disability beginning July 22, 2014. (A.R. 16.) The claim was denied initially on January 7, 2015, and upon reconsideration on April 29, 2015. (*Id*.) Plaintiff then requested a hearing. (*Id.*) On March 20, 2017, Plaintiff, her representative, and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 37-62.) The ALJ issued a written decision on June 5, 2017, finding Plaintiff not disabled within the meaning of the Social Security Act. (*Id.* at 16-28.) This became the Commissioner's final decision when the Appeals Council denied review. (*Id.* at 1-3.)

On June 22, 2018, Plaintiff sought review by this Court. (Doc. 1.) After receipt of the administrative record (Doc. 11), the parties fully briefed the issues for review (Docs. 14-16). For reasons stated below, the Court reverses the Commissioner's decision and remands for an award of benefits.

# BACKGROUND

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018, and that she has not engaged in substantial gainful activity since July 22, 2014. (A.R. 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: headaches, non-epileptic event disorder, obesity, cognitive disorder, depressive disorder, bipolar disorder, anxiety disorder, and panic disorder. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments do not meet or equal the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 19.) At step four, the ALJ found that Plaintiff:

> has the [RFC] to perform a full range of work at all exertional
> levels but with the following nonexertional limitations: the
> claimant can occasionally balance and climb ramps or stairs,
> but can never climb ladders, ropes, or scaffolds. The claimant
> can have occasional exposure to excessively loud noises, can
> have no exposure to dangerous machinery with moving

mechanical parts, can have no exposure to unprotected heights, and cannot drive as part of her job. Mentally, the claimant is limited to tasks that can be learned by demonstration within thirty days, work that does not involve fast-paced work requirements, and work involving minimal, in-person public interaction.

(*Id.* at 21.) With this RFC in mind, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 26.) Moving to step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including those of cleaner (DICOT 381.687-022, 1991 WL 673259), kitchen helper (DICOT 318.687-010, 1991 WL 672755), and hand packager (DICOT 920.587-018, 1991 WL 687916). (*Id.* at 28.) Consequently, the ALJ held that Plaintiff had not been disabled through the date of her decision. (*Id.*)

## STANDARD OF REVIEW

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a mere scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

In determining whether the ALJ committed legal error, the district court is bound to apply the legal standards imposed by the law of this Circuit. This includes the requirement that, unless contradicted by another physician, if "the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

**DISCUSSION**

On appeal, Plaintiff challenges the ALJ's decision on two bases. First, she argues that the ALJ committed reversible error by failing to analyze Plaintiff's psychogenic seizures under Listing 12.07 of the Listing of Impairments during her step three evaluation. Second, she contends that the ALJ erred by improperly rejecting the opinions of her treating physician, Dr. Ronald Bennett, M.D. (Doc. 24 at 10-15.) Having reviewed the record and the parties' briefs, the Court agrees that the ALJ erred by failing to evaluate Plaintiff's psychogenic seizures under Listing 12.07 and by improperly rejecting the medical opinions of Plaintiff's treating physician. Although the ALJ's failure to assess Plaintiff's impairments under Listing 12.07 was harmless, the Court finds the ALJ's rejection of Dr. Bennett's opinions harmful. Therefore, the ALJ's decision must be reversed and remanded for an award of benefits for the reasons explained below.

**I.       The ALJ's Failure to Evaluate Plaintiff's Psychogenic Seizures Under Listing 12.07 Constitutes Harmless Error.**

Plaintiff asserts that, had the ALJ evaluated Plaintiff's impairments under Listing 12.07, as she was required to do, she would have found Plaintiff disabled at step three. (Doc. 14 at 14.) At step three, the ALJ considers whether Plaintiff's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If Plaintiff's impairments rise to the level of a listed impairment, Plaintiff is disabled.

Here, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of listings 12.02, 12.04 and 12.06. (A.R. 19.) However, the ALJ made no mention of Listing 12.07, Somatic symptom and related disorders, which Plaintiff contends is the appropriate listing to assess Plaintiff's psychogenic seizures. (Doc. 14 at 14.) Somatic symptom and related disorders

> are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience. These disorders may also be characterized by a preoccupation with having or acquiring a serious medical condition that has not been identified or diagnosed. Symptoms and signs may

> include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, *pseudoseizures*, and pseudoneurological symptoms, such as blindness or deafness.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07 (emphasis added).

Listing 12.07 is the proper listing to assess Plaintiff's psychogenic seizures. The ALJ's failure to explicitly discuss whether Plaintiff's impairments meet or equal Listing 12.07 was error. The Court concludes, however, that such error was harmless because the requirements to meet Listing 12.07 are identical to the requirements of Listings 12.02, 12.04, and 12.06. *See* C.F.R. pt. 404, Subpt. P, App. 1 § 12.00. The ALJ thoroughly considered the requirements of Listings 12.02, 12.04, and 12.06 and supported her finding that Plaintiff did not meet their standards with substantial evidence. (A.R. 19-20.) Therefore, Plaintiff's assertion that the ALJ would reach a different result when evaluating these identical requirements in the context of Listing 12.07 is unavailing.[1] As a result, this error is not a basis for remand.

## II. The ALJ's Rejection of Dr. Bennett's Opinions Constitutes Harmful Error.

Next, Plaintiff argues that the ALJ committed harmful error by improperly giving little weight to the opinion of her treating physician, Dr. Bennett. (Doc. 14 at 10-13.) The Court agrees.

To begin, more weight generally should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *Orn*, 495 F.3d at 631. However, a treating physician's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable diagnostic techniques and is not inconsistent

---

[1] When whittled to its roots, Plaintiff's argument asserts that, were the Court to *reweigh* evidence concerning the impact of Plaintiff's seizures on her functioning in a manner favorable to Plaintiff, it would find that Plaintiff's impairments meet or medically equal Listing 12.07. This is not the Court's standard of review. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

with other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(d)(2).  Even where a treating physician's opinion is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

In support of her application, Plaintiff offered the opinions of Dr. Bennett, her treating physician.  Dr. Bennett noted that Plaintiff had, on average, ten seizures per week and that postictal manifestations could last minutes to hours.  (A.R. 270-71.)  On July 22, 2014, after reviewing one Electroencephalogram (EEG) and performing a second EEG, Dr. Bennett diagnosed Plaintiff with a seizure disorder of deep level origin.  (*Id.* at 468, 542.)  Further, after reviewing Plaintiff's records and conducting neurological and physical exams, he opined that Plaintiff's symptoms would frequently interfere with her attention and concentration, that she was incapable of managing even low stress situations, would need to take daily one-hour breaks at erratic times, would experience unpredictable "highs" and "lows" and would need to miss more than three days of work per month.  (*Id.* at 270-74, 534, 543.)

The ALJ discounted Dr. Bennett's opinions, rationalizing that they were based on Plaintiff's subjective complaints, inconsistent with Plaintiff's activities, and contrary to certain medical findings in the record.  (*Id.* at 25.)  At face value, the reasons given by the ALJ are all are specific and legitimate reasons for discounting Dr. Bennett's opinions.  *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citations omitted) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (An ALJ may discredit the opinion of a treating physician that is unsupported by the record as a whole).  If founded, these reasons could justify a decision to give Dr. Bennett's opinions less than controlling weight.  In this case, however, substantial evidence does not support the reasons the ALJ gave for rejecting Dr. Bennett's opinions.  *See Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001).  The Court will address each of the ALJ's reasons, in turn.

**A. Dr. Bennett's Opinions are not Based Primarily on Plaintiff's Subjective Complaints.**

First, the ALJ rejects Dr. Bennett's opinions, contending that they are based upon Plaintiff's subjective complaints, rather than objective evidence. (A.R. 25.) However, Dr. Bennett looked to various objective sources to form his conclusions, including Plaintiff's medical records, the results of neurological and physical exams that he performed on Plaintiff, and two EEGs. (*Id.* at 270-74, 534, 543.) In other words, this is not the case in which rejection of the treating physician's assessment is appropriate because it was a mere "rehashing of claimant's own statements[]" with "little independent analysis or diagnosis." *Tomasetti*, 533 F.3d at 1041. Consequently, the ALJ's first reason for rejecting Dr. Bennett's opinions is unsupported by substantial evidence.

**B. Dr. Bennett's Opinions are not Inconsistent with Plaintiff's Daily Activities.**

Second, the ALJ assigned Dr. Bennett's opinions little weight because she found them inconsistent with Plaintiff's activities, "including her recent ability to travel to Montana and California, and [] babysitting her granddaughter, albeit currently her mother helps out." (A.R. 25.) The ALJ's characterizes Plaintiff's activities at a high level of generality so as to depict Plaintiff as more functional and independent than her circumstances allow. It is true that Plaintiff took a trip to Montana in order to visit an ailing relative. (*Id.* at 49.) However, Plaintiff was accompanied by family who cared for her as she experienced a seizure on the airplane. (*Id.*) It also is true that Plaintiff visited her mother in California. (*Id.* at 44.) Once again, she was accompanied by family who cared for her during her stay. (*Id.*) Without more, the Court cannot see how the Plaintiff's ability to go on escorted trips while under the care of her relatives is inconsistent with Dr. Bennett's findings.

Similarly, the ALJ determined that Plaintiff's ability to care for her infant granddaughter is contrary to Dr. Bennett's findings. But the ALJ's portrayal of Plaintiff's activities overlooks important particulars. Plaintiff has never cared for her granddaughter

alone, and experiences seizures while co-babysitting in response to her granddaughter's cries. (*Id.* at 47-48.) The Court is equally unpersuaded that Plaintiff's ability to interact with her granddaughter is inconsistent with Dr. Bennett's findings.

Elsewhere in her opinion, the ALJ references additional activities performed by Plaintiff that, although not explicitly mentioned during her rejection of Dr. Bennett's opinions, might be relevant. Particularly, the ALJ notes that Plaintiff "could maintain all aspects of her personal care, care for her dog, perform light housecleaning, wash the dishes, prepare simple meals, crochet and cross stitch, manage her finances, use a computer, watch television, leave the house daily, shop for groceries, and dine out in restaurants." (*Id.* at 24 (citing Ex. 4E at 2-5).) But again, this broad generalization of Plaintiff's abilities mischaracterizes her condition. In the same exhibit cited by the ALJ to support her characterization, Plaintiff explains that she needs reminders to perform personal care or household tasks, her boyfriend primarily cares for their dog, she cannot cook a simple meal without having a seizure, she can only crochet or cross stich approximately once or twice a month due to hand tremors, is always accompanied when leaving the house, and only shops in the early morning with her daughter to avoid exposure to crowds. (*Id.* at 235.) The omitted information included in the same three pages cited by the ALJ, alone, paints a very different picture of Plaintiff's state.

Regardless, Plaintiff's ability to perform any of these activities on a good day, even as the ALJ describes them, is not inconsistent with Dr. Bennett's conclusion that can be boiled down to the following: Plaintiff's condition is inherently erratic. There will be good times and bad times, and the bad times proscribe employment. In sum, the ALJ's second reason for rejecting Dr. Bennett's opinions is unsupported by substantial evidence.

**C. Dr. Bennett's Opinions are not Contrary to "Normal" Medical Findings.**

Third, the ALJ assigned Dr. Bennett's opinions little weight because the ALJ determined they "contradict the medical findings of normal ambulation, strength, movement, behavior, and thought, which suggest that her episodes do not cause long-

lasting limitations." (A.R. 25 (citing Exs. 2F, 3F, 7F-11F, 13F-15F, 21F-27F).)[2] Dr. Bennett opined that Plaintiff will have both good days and bad; although she might be able to function at a higher level occasionally, her "downs" will cause her to require random breaks and to miss so much work as to render her unemployable. The existence of relatively normal results from cursory physical evaluations is not inconsistent with this conclusion. Nor is the suggestion that Plaintiff's episodes do not cause "long lasting limitations" necessarily inconsistent. Rather, the exhibits cited by the ALJ *support* the conclusion that Plaintiff has "variable abilities . . . given the frequency and unpredictability of her seizures." (*Id.* at 552.) For example, although these records reflect that Plaintiff appeared oriented and with normal mood, affect and strength on various occasions (*Id.* at 367, 387, 399, 458, 464, 482, 506-07, 569, 573), at others she was disoriented, confused, and tearful and exhibited word-finding difficulties, poor responsiveness, tremors, slow processing, and memory problems (*Id.* at 375, 398, 401, 406, 548-49, 551). Dr. Bennett does not opine that Plaintiff exhibits irregular functioning constantly or even most of the time. The records cited by the ALJ therefore do not contradict Dr. Bennett's conclusions. As a result, the ALJ's third reason for rejecting Dr. Bennett's opinions is unsupported by substantial evidence.

Because the reasons offered by the ALJ are not supported by substantial evidence, the ALJ erred in giving only "little weight" to Dr. Bennett's opinions. Such error was harmful because assigning controlling weight to Dr. Bennett's opinions would necessitate

_____

[2] To reject a treating physician's opinion based on inconsistent evidence, "an ALJ 'can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof and making findings. The ALJ must do more than state conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors[], are correct." *Garrison v. Colvin,* 759 F. 3d 995, 1014 n. 17 (9th Cir. 2014). The Court is unpersuaded that the ALJ met this standard, here. The ALJ cited, without further explanation, to hundreds of pages of exhibits for the Court to sift through in an effort to determine what data constituted the "medical findings of normal ambulation, strength, movement, behavior and thought" that justified her conclusion. The ALJ also provided no guidance as to why she rejected evidence of irregular functioning that was often on the very same page as evidence citing normal functioning. However, the Court need not decide whether this particular standard was met because it finds that the ALJ failed to meet the substantial evidence requirement for other reasons.

1  a finding of disability.[3]

2      **III.    Scope of Remand**

3          Having determined that the ALJ committed reversible error, the Court has discretion

4  to remand the case for further development of the record, or to credit the improperly

5  rejected evidence as true and remand for an award benefits.  *See Garrison*, 759 F.3d at

6  1019.    Under the credit-as-true rule, in deciding whether to remand for an award of

7  benefits, the Court considers whether: (1) the ALJ failed to provide legally sufficient

8  reasons for rejecting evidence, (2) the record has been fully developed and further

9  proceedings would serve no useful purpose, and (3) it is clear from the record that the ALJ

10  would be required to find the claimant disabled were such evidence credited.  *Triechler v.*

11  *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014).  If all three conditions are

12  met, an award of benefits is appropriate.  All three conditions of the credit-as-true-rule are

13  met here.

14          First, as explained above, the Court finds that the ALJ's decision to discount Dr.

15  Bennett's opinions is unsupported by substantial evidence.  Second, because the ALJ's

16  error was not due to a failure to develop the record, further proceedings would serve no

17  useful purpose.  Finally, during the hearing, the VE testified that someone with the

18  limitations assessed by Dr. Bennett would be unable to perform Plaintiff's past relevant

19  work or other work.  (A.R. 61.)   Accordingly, if Dr. Bennett's opinions were credited as

20  true, the ALJ would be required to find Plaintiff disabled.  The Court therefore exercises

21  its discretion to remand for an award of benefits.

22  //

23  //

24  //

25  //

26

27          [3] The VE testified that if Plaintiff's condition requires her to miss three or more days
of work per month, as assessed by Dr. Bennett, it would disqualify her from competitive
28  employment.  (A.R. 61.)   As a reminder, "[o]ne does not need to be 'utterly incapacitated'
in order to be disabled."  *Vertigan v. Halter*, 260 F. 3d 1044, 1050 (9th Cir. 2001) (citing
*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

1     **IT IS ORDERED** that the final decision of the Commissioner of Social Security is

2    **REVERSED** and the case **REMANDED** for an award of benefits. The Clerk shall enter

3    judgment accordingly and terminate the case.

4         Dated this 24th day of September, 2019.

Douglas L. Rayes
United States District Judge